IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ⟋⟍ ___ D.C.

05 DEC -1  AM 11: 44

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                    No. 05-20142 B

CALVIN MCNARY,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

In a one-count indictment, the Defendant, Calvin McNary, has been charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  The Defendant has filed a motion to suppress the weapon, upon which this Court conducted an evidentiary hearing on September 28, 2005.  Upon a review of the testimony, as well as the submissions of the parties, the motion to suppress is hereby GRANTED.

Several witnesses testified at the hearing, giving somewhat varying accounts of what occurred.   According to his testimony, Patrolman Chester D. Anderson of the Memphis, Tennessee Police Department was patrolling his assigned ward on November 1, 2004 when he heard a gunshot nearby.  He had worked in the area for five years and was familiar with the high-crime locations within the ward.  When he heard the shot, he was seated alone in his patrol car at Decatur and Merriweather, about 20 or 30 feet from 1030 Merriweather, which was located in an apartment complex.  He pulled into the complex some five to ten seconds later and found a group of individuals in the parking lot yelling, screaming and pointing to a black male outside a second floor apartment who had supposedly fired the shot.  They identified the shooter as the

Defendant, a person known to the officer as a crack user. Anderson related that he was also aware of McNary's association with an individual named Sandino Stone, with whom the patrolman was also familiar, who dealt in illegal substances and supplied crack users with drugs in exchange for permission to sell his wares from their apartments. The officer testified that Stone had been selling drugs from McNary's apartment, identified as number 6 upstairs at 1030 Merriweather.

Anderson called for backup and ran to detain the Defendant, who was standing apparently unarmed outside his apartment. The officer did not have his weapon drawn. When Anderson first saw the Defendant, it appeared that he had either just stepped from the apartment or had reached in the door. The door leading into the apartment was still partially open approximately two feet. He did not see the Defendant handle a gun or make a complete entry into the apartment. The officer patted McNary down, handcuffed him, and placed him in a squad car. By that time, Anderson's partner, Officer Rouse, had arrived in a separate car and taken custody of Sandino, who had been part of the crowd gathered on the ground. Upon questioning, Anderson denied knowing whether there was anyone else in the apartment.

After McNary and Sandino were secured, Anderson, along with other officers, returned to the apartment. Anderson looked through the open door and observed what appeared to be a crack pipe on the television set no more than five feet from the entrance. Upon opening the door further and entering the residence, officers saw the butt of a handgun sticking out from under a mattress resting on the floor. The weapon, like the crack pipe, was also about five feet from the door on the other side of the small apartment. At that point, the officers "cleared the house" to ensure there was no one else in the home.

The defense offered the testimony of the Defendant's neighbor, Estelle Davis, who lived

2

in apartment 8 of the same building. She remembered that, when she walked past McNary's apartment on the day of his arrest, the door was closed. She recalled little else about that day except that her sister, the manager of the complex, had spoken in loud tones with the Defendant. Davis had no recollection of a gun shot and expressed confusion with respect to numerous other details, including the year in which the incident occurred.

In her testimony, Davis's sister Joyce Lowe conceded that she had engaged in a hostile encounter with McNary at the time the shooting took place and that she, the Defendant and Davis had been drinking and were intoxicated. Her recollection, which followed that of Anderson, was that the door to McNary's apartment was open at the time the officer arrived. According to Lowe, the Defendant, who still had the gun in his hand, moved to the door of his apartment and threw it inside, leaving the door "wide open." She recalled that the gun was in fact visible from the walkway.

In his supporting memorandum, the Defendant contends that the evidence should be suppressed based upon the lack of probable cause to make an arrest and the unconstitutional nature of the search of his apartment following his arrest. The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Generally, this means that, with some specifically delineated exceptions, every governmental search and seizure must be made pursuant to a warrant." United States v. Taylor, 248 F.3d 506, 511 (6th Cir.), cert. denied, 534 U.S. 981, 122 S.Ct. 414, 151 L.Ed.2d 315 (2001). Evidence obtained by a warrantless search and seizure

that violates the Fourth Amendment is inadmissible in a criminal trial. <u>United States v. Wright</u>, 16 F.3d 1429, 1434 (6th Cir.), <u>cert. denied</u>, 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994).

The Defendant first argues that officers responded to a call received over the police radio for which there was no information concerning the veracity of the informant. Clearly, the Fourth Amendment requires the presence of probable cause for an arrest. <u>See</u> <u>Lyons v. City of Xenia</u>, 417 F.3d 565, 573 (6th Cir. 2005). Under <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), however, the Fourth Amendment is satisfied with respect to an investigative stop if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot, even if probable cause is absent. <u>United States v. Arvizu</u>, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002); <u>United States v. Bailey</u>, 302 F.3d 652, 658 (6th Cir. 2002). An informant's tip will support a finding of probable cause so long as the informant is shown to be reliable. <u>United States v. McCraven</u>, 401 F.3d 693, 697 (6th Cir. 2005), <u>cert. denied</u>, ___ S.Ct. ___, 2005 WL 2922762, 74 U.S.L.W. 3288 (Nov. 7, 2005) (No. 05-6884); <u>United States v. Allen</u>, 211 F.3d 970, 972-76 (6th Cir.), <u>cert. denied</u>, 531 U.S. 907, 121 S.Ct. 251, 148 L.Ed.2d 181 (2000).

While Lowe did in fact make a 911 emergency call, the undisputed testimony at the hearing was that Anderson was close enough to hear and respond to the actual gunshot which prompted her call to police. It is also undisputed that, when he arrived on the scene, individuals in the parking lot were pointing at the Defendant and identifying him as the shooter. Therefore, the stop and subsequent arrest of McNary were within the bounds of the Fourth Amendment independent of Lowe's veracity and reliability. <u>See</u> <u>Lyons</u>, 417 F.3d at 573 ("it has long been true that [the probable cause] inquiry turns on whether the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in

believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.")

The next issue raised by the Defendant concerns the officers' entry into his apartment. It is conceded that the officers in this case did not have a warrant to enter McNary's apartment. To satisfy the Constitution, a search must be "reasonable." "In determining reasonableness, the court must balance the intrusiveness of the search against the government's interest in conducting the search under the circumstances." United States v. Biggs, 70 F.3d 913, 915 (6th Cir. 1995), cert. denied, 516 U.S. 1139, 116 S.Ct. 971, 133 L.Ed.2d 891 (1996) (citations omitted).

The Government argues that seizure of the gun did not offend the Constitution based on the plain view doctrine, a recognized exception to the Fourth Amendment warrant requirement. A warrantless seizure of incriminating evidence is permissible under the exception where (1) the officer is lawfully positioned in a place from which the object can be plainly viewed; (2) the incriminating character of the object is immediately apparent; and (3) the officer has a lawful right of access to the object itself. Boone v. Spurgess, 385 F.3d 923, 928 (6th Cir. 2004). The discovery of the evidence need not be inadvertent. Horton v. California, 496 U.S. 128, 141, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990). It is incumbent upon the Government to establish that an exception to the warrant requirement applies. O'Donnell v. Brown, 335 F.Supp.2d 787, 804 (W.D. Mich. 2004) (citing United States v. Oliver, 686 F.2d 356, 371 (6th Cir. 1982)).

Specifically, the Government maintains that the crack pipe was in plain view through the open door to the officers from their lawful vantage point on the apartment building balcony walkway

and that the "incriminating character" of the item was "immediately apparent."[1]  The Court agrees that the prosecution has satisfied the initial two elements necessary in finding the exception applicable. As to the first, Anderson testified that the crack pipe on the television set inside the apartment was visible through the open door from his vantage point outside.  Although Estelle Davis testified that the door was closed, the Court discounts the recollection of this witness, whose failure to remember material details of the events renders her credibility suspect.

With regard to the second element, in determining whether the criminal nature of a piece of evidence was "immediately apparent," the Sixth Circuit has suggested consideration of the following factors:  "1) a nexus between the seized object and the items particularized in the search warrant, 2) whether the 'intrinsic nature' or appearance of the seized object gives probable cause to believe that it is associated with criminal activity, and 3) whether the executing officers can *at the time* of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature."  United States v. McLevain, 310 F.3d 434, 441 (6th Cir. 2002) (citations and internal quotation marks omitted) (emphasis in original).  Clearly, the incriminating character of a crack pipe to a police officer is immediately apparent.  See Taylor, 248 F.3d at 512 (incriminating character of marijuana stem immediately apparent, permitting seizure thereof); United States v. LaFountain, 252 F.Supp.2d 883, 889 (D.N.D. 2003) (crack pipe in plain view established probable cause to search remainder of vehicle).

The third element is more troublesome, however.  The Court must decide whether the

---

[1]The Court's analysis would be the same if the gun were in plain view as Lowe suggested in her testimony.  The Court however credits the officer's testimony that the gun was not in plain view from the balcony but rather was first observed *after* the police entered the apartment.

officers had a lawful right of access to the crack pipe. That is, did they have lawful access to the *interior* of McNary's apartment. If the answer is no, the seizure of the pipe, and by extension the seizure of the gun, violated the Fourth Amendment.

"[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment was directed." Payton v. New York, 445 U.S. 573, 585-86, 100 S.Ct. 1371, 1379-80, 63 L.Ed.2d 639 (1980) (citation omitted). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Id. at 586, 100 S.Ct. at 1380 (internal quotation marks omitted). The Supreme Court made clear in Payton that, whether seizure of persons or property is concerned, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id. at 590, 100 S.Ct. at 1382; see also United States v. Morgan, 743 F.2d 1158, 1161 (6th Cir. 1984), cert. denied, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985) (citing Payton); United States v. Bell, No. CR. 01-20147-GV, 2002 WL 1483874, at *6 (W.D. Tenn. June 26, 2002) (same). The Supreme Court's stance was reiterated in Kirk v. Louisiana, 536 U.S. 635, 638, 122 S.Ct. 2458, 2459, 153 L.Ed.2d 599 (2002), in which it stated that "[a]s Payton makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."

Similarly, the Sixth Circuit articulated in Morgan that

the plain view doctrine does not authorize warrantless entries into a private home merely because an item of contraband has become visible to those outside. . . Plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle . . . that no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances. Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of

probable cause. But even where the object is contraband, . . . the police may not enter and make a warrantless seizure.

Morgan, 743 F.2d at 1167 (citations and internal quotation marks omitted) (emphasis in original).

Thus, as this Court interprets the relevant precedent, viewing incriminating evidence from outside the Defendant's residence was not sufficient in itself to permit entry *unless* exigent circumstances be shown. Warrantless entries are allowed under exigent circumstances, which exist where there are "real immediate and serious consequences that would certainly occur were a police officer to postpone action to get a warrant." Shamaeizadeh v. Cunigan, 338 F.3d 535, 548 (6th Cir. 2003), cert. denied, 541 U.S. 1041, 124 S.Ct. 2159, 158 L.Ed.2d 729 (2004) (citation omitted). The Sixth Circuit recognizes certain situations in which abandonment of the warrant requirement because of exigent circumstances may be justified: (1) hot pursuit of the fleeing suspect, (2) imminent destruction of evidence; (3) need to prevent the suspect's escape; and (4) risk of danger to police and others. United States v. Williams, 354 F.3d 497, 503 (6th Cir. 2003). An inquiry into whether exigent circumstances exist looks only to the moment the police entered the residence. Ewolski v. City of Brunswick, 287 F.3d 492, 504 (6th Cir. 2002), reh'g and suggestion for reh'g en banc denied (July 16, 2002).

Obviously, the first and third situations are not present here, as, at the time the officers entered the apartment, McNary was handcuffed and confined to the back of a police cruiser. Rather, it is the Government's position that "exigent circumstances justify the entry inside the home to seize the loaded, recently fired, pistol that was only feet from the open door." (Mem. and Authorities in Resp. to Def.'s Mot. to Suppress at 5 n.2.) This argument lacks merit, however. At the time they entered the apartment, officers did not know the weapon alleged to have been fired by the Defendant was still loaded or its location. According to the testimony of

8

Anderson, the first officer on the scene, he never actually saw McNary with a gun. Nor can it be said that destruction of the gun was "imminent" since the Defendant's only known housemate was also handcuffed and detained, thereby leaving no one else in the residence to destroy it. Moreover, as his fear of destruction of evidence was, according to his hearing testimony, based upon the possibility that evidence could "disappear" in such a high crime area, the danger could have been alleviated simply by asking the apartment manager, who was on the scene, to lock the door until officers could return with a search warrant. The law is well-settled that a warrantless entry will be sustained when the circumstances then extant were such as to lead a person of reasonable caution to conclude that evidence of a federal crime would probably be found on the premises and that such evidence would probably be destroyed within the time necessary to obtain a search warrant. United States v. Ukomadu, 236 F.3d 333, 337 (6th Cir. 2001). In this case, no such evidence of imminent destruction, beyond a mere possibility, has been established.

Assuming the Government's contention implicates the fourth scenario, in order for the exigent circumstances exception to apply, a "need to protect or preserve life or avoid serious injury" must exist. O'Donnell, 335 F.Supp.2d at 805 (citing O'Brien v. City of Grand Rapids, 23 F.3d 990, 997 (6th Cir. 1994)). "[T]he authorities must be presented with a 'true immediacy' and a 'real danger that serious consequences would certainly occur.'" Id. "The mere possibility of danger is not enough." Id. Here, the only testimony suggesting a risk of harm was Anderson's generalized concern that children might enter the apartment, pick up the gun and injure themselves or someone else. Again, locking the door would appear to solve the problem.[2] Based upon the

---

[2]Indeed, the Court assumes based on the evidence adduced at the hearing that probable cause existed for the issuance of a search warrant for McNary's apartment.

9

evidence presented, it is the conclusion of the Court that the Government has demonstrated at best a *possibility* that evidence might be handled by neighborhood children. Thus, it has failed to show the existence of exigent circumstances.

The cases cited by the Government are either consistent with the Court's conclusions or unpersuasive under the facts of this case. In United States v. Fields, 113 F.3d 313, 318 (2d Cir.), cert. denied, 522 U.S. 976, 118 S.Ct. 434, 139 L.Ed.2d 334 (1997), police observed the defendants bagging cocaine inside a house by looking through a window whose venetian blinds had been raised five or six inches. The window faced a fenced-in side yard. Id. The court denied the defendants' motion to suppress, finding that they failed to "establish that they took advantage of [their legitimate expectation of privacy in the residence] at the time of the window search." Id. at 321. In addition, the court stated that "[a]lthough society generally respects a person's expectations of privacy in a dwelling, what a person chooses voluntarily to expose to public view thereby loses its Fourth Amendment protection." Id. In doing so, the court relied on the Supreme Court's determination in California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). In Ciraolo, a police overflight above the defendant's property revealed a backyard marijuana garden, which became the basis for the issuance of a search warrant for the property. Ciraolo, 476 U.S. at 213-14, 106 S.Ct. at 1812-13. Therefore, the issue in Ciraolo was different from that before the Court in this prosecution, which involves a *warrantless* entry based on plain view. In any case, this Court is simply unwilling, based upon the facts before it, to strip the Defendant of any expectation of privacy in his home simply because his apartment door was open. Fields enjoys no precedential value in this Circuit and, significantly, the court therein went on to find the existence of exigent circumstances, including the defendant's reputation

10

for violence and a loaded gun within his reach, as well as good reason on the part of the police that the defendants would attempt to flee or destroy evidence.  See Fields, 113 F.3d at 323.

A subsequent case from the Second Circuit follows the reasoning set forth in Fields.  In United States v. Gori, 230 F.3d 44 (2d Cir. 2000), cert. denied sub nom. Pichardo v. United States, 534 U.S. 824, 122 S.Ct. 62, 151 L.Ed.2d 29 (2001), the court opined that "what a person knowingly exposes to the public, *even in his own house* or office, is not a subject for Fourth Amendment protection."  Id. at 51-52 (citing Fields) (emphasis in original).  It is worth noting that, as in Fields, the court also found that the officers acted reasonably to a "swiftly developing situation."  Id. at 54-55.

The Gori decision has been cited by at least one case in the Sixth Circuit.  In United States v. Saari, 272 F.3d 804 (6th Cir. 2001), the court, specifically stating that it neither agreed nor disagreed with Gori's analysis, found it distinguishable from the case before it because Saari "did not voluntarily expose himself to the public so as to eliminate the Payton requirements of a warrant or exigent circumstances."  Id. at 811 & n.5.

The Seventh Circuit recently rejected the outcome espoused by the Second Circuit in these types of cases in Hadley v. Williams, 368 F.3d 747, 750 (7th Cir. 2004), reh'g and reh'g en banc denied (June 21, 2004).  The court found that

> [w]e are mindful of cases in other circuits which hold that when the front door swings open in response to the knock of the police, the police can, by virtue of the "plain view" doctrine, seize anything they see through the open doorway, since by opening the door the person who opened it consented to their presence on the threshold. [citing Gori]  But those decisions . . . are inconsistent with the spirit of Payton . . . Those cases equate knowledge (what the officer obtains from the plain view) with a right to enter, and by doing so permit the rule of Payton to be evaded.
>
> Which is not to say that knowledge obtained by the plain view from the threshold

> cannot lawfully be used. If the officer knocks, sees something inside when the door is opened, and then turns on his heel and uses the information he's just obtained to get a warrant, no one's rights have been violated. But that is not what happened here. It is also true that if having seen from the threshold contraband, evidence of crime, or a person who they have probable cause to believe has committed a crime and should be arrested, the police reasonably fear that before they can obtain a warrant the contraband or evidence will be destroyed or the criminal flee the nest, the case becomes one of "exigent circumstances" and the police can take steps to secure the evidence or the person.

Id. at 750 (internal citations omitted).

The Bell decision, from this district, reached a similar conclusion. In Bell, the defendant answered a knock by police officers at his door, holding a gun in hand. Bell, 2002 WL 1483874 at *5. The court decided that, while the officers did not violate the defendant's Fourth Amendment rights in observing the gun, they did do so upon entering the residence, stating that "the plain view exception based on the detectives' observations of a gun from the porch alone, however, cannot support the officers' crossing the house's threshold . . ." Id. at *6 (internal quotation marks omitted). Based on the facts before it, the judge concluded that the visibility of contraband inside a private home does not on its own justify entry. Id.; see also United States v. Killebrew, 560 F.2d 729, 734 (6th Cir. 1977).

The Government has also cited to United States v. Jones, 239 F.3d 716, 718 (5th Cir.), cert. denied, 534 U.S. 861, 122 S.Ct. 142, 151 L.Ed.2d 94 (2001), in which officers approached the defendant's apartment for a "knock and talk." The door was ajar and the screen was closed, giving the officers a view inside the apartment.

> Officer Ruff approached the screen door, knocked, and announced his presence. At this time, Jones was standing with his back to the door near a kitchen table. A handgun rested on the kitchen table in plain view to the nearby officers in the doorway. Another man sat on a nearby couch. During the seconds that followed, Jones unlocked the screen door and began talking to the police in the common

12

area.  Officer Ruff entered the apartment and secured the gun on the kitchen table.

Id. at 719.  The court, recognizing that "warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment," found that Jones created an exigent circumstance by leaving the door open and a handgun in plain view and within reach of the other occupant.  Id. at 720-22.  Based on these facts, the Court does not find Jones at odds with its conclusions here.

A subsequent district court case from the Fifth Circuit with facts closer to those at bar illustrates this fact.  In United States v. Mercadel, 226 F.Supp.2d 810, 811 (E.D. La. 2002), the government's witness testified that "in the course of doing a good deed for an apprehended felon, he found himself perched on his toes on the threshold of the defendant's front doorway, from which he was able to peer through a narrow gap above a sheet covering the door, block out the glare from the noonday sun by cupping his hands around his eyes, and observe marijuana on a table in the front room."  Specifically, the officer contended that, when he arrived at the residence, the front door was open and the screen door closed.  Id. at 812.  The defendant came to the door and was asked by the officer to step outside, which he did.  Id.  The officer informed the defendant he was conducting a drug investigation; secured him; instructed another occupant of the house to exit, who was also secured; and then entered the house in order to seize the marijuana.  Id. at 812-13.  The court noted that the Fourth Amendment's guarantees are to be "zealously guarded."  Id. at 813 (citing Coolidge v. New Hampshire, 403 U.S. 443, 474-75, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)).  Jones was cited as support for the proposition that, absent exigent circumstances, "[t]he presence of contraband in plain sight does not itself create the legal access necessary to effect a warrantless entry."  Id. at 814 (citing Jones).  In determining, based

13

on both <u>Jones</u> and <u>Payton</u>, that exigent circumstances did not in fact exist, the court articulated

that "[w]ith probable cause and the lack of an exigency, the proper procedure would have been

for Sergeant Morrell to attempt to obtain a warrant, and to maintain surveillance of the property

until the warrant was obtained." <u>Id.</u> at 817. The same is true in this case.

In addition, in <u>United States v. Vega</u>, 221 F.3d 789, 796 (5th Cir. 2000), <u>cert. denied</u>, 531

U.S. 1155, 121 S.Ct. 1105, 148 L.Ed.2d 975 (2001), the Fifth Circuit decided that "[w]e reject

as untenable the proposition that because [a co-defendant] exiting the house left a side door open

that [a remaining occupant]'s expectation of privacy was in some way diminished." In a footnote,

the court cited to cases holding that leaving a door open on a summer day when at other times it

was locked, or where a door was "open through simple inadvertence or design," is not sufficient

to support a ruling that the occupant forfeited any expectation of privacy by failing to secure his

property. <u>See</u> <u>id.</u> at 796 n.12 (citations omitted).

It further bears noting that, to the extent the Government suggests that entry into the

apartment constituted a "protective sweep," that contention is also without merit. It is undisputed

that McNary was arrested *outside* his apartment. In <u>Maryland v. Buie</u>, 494 U.S. 325, 327, 110

S.Ct. 1093, 1094, 108 L.Ed.2d 276 (1990), the Supreme Court defined a "protective sweep" as

"a quick and limited search of premises, incident to an arrest and conducted to protect the safety

of police officers or others. It is narrowly confined to a cursory visual inspection of those places

in which a person might be hiding." "In order for officers to undertake a protective sweep of an

area they must articulate facts that would warrant a reasonably prudent officer to believe that the

area to be swept harbored an individual posing a danger to those on the scene." <u>Biggs</u>, 70 F.3d

at 915 (citing <u>Buie</u>).

14

Biggs is factually similar to the case at bar and, therefore, particularly instructive. The defendant sought suppression of evidence seized during a protective sweep of his motel room incident to his arrest in the parking lot. Id. at 914. The Sixth Circuit applied the law to the facts before it as follows:

> In order to find the protective sweep constitutional under Buie, the officers must articulate why it was reasonable for them to undertake a warrantless search of a motel room 20-75 feet from the arrest site once they had the defendant under their control. It is undisputed that Biggs had an expectation of privacy in his hotel room. In this case, the officers based the need for the search on several articulable factors that would lead a reasonably prudent officer to believe that the officers might be in danger from someone in the motel room. First, the officers had received information that another person would be meeting defendant at the motel room.[3]  Although the officers never saw anyone enter the room during the surveillance period, they did not know if someone was already in the room when they arrived. Second, defendant left the motel room door open so that anyone present in the room had a clear view of the officers, thereby threatening their safety from an unknown person present in the room. Third, the officers were familiar with defendant and knew that he had been arrested on two previous occasions in the presence of someone in possession of a firearm. In addition to these reasons, the officers did not act unreasonably in accompanying a shoeless, shirtless man about to be transported to jail back to his motel room. The door to the room was standing open. The defendant had clothes and other personal items to be retrieved. It was only natural, as a matter of common sense, for the officers to go with the defendant back into the room to retrieve his possessions. The law does not require officers to leave common sense at the door.

Id. at 916 (internal citations omitted). With respect to the foregoing discussion concerning the open door, it appears to the Court that such a circumstance is a mere factor to be considered in determining whether the warrantless entry into a dwelling is reasonable under the Fourth Amendment.

---

[3]In United States v. Colbert, 76 F.3d 773, 777-78 (6th Cir. 1996), the Sixth Circuit found that a protective sweep of an apartment after the defendant was arrested outside was unreasonable as the officers had no information additional persons may have been inside. There is no evidence before the Court that other persons might have been present within McNary's apartment.

In sum, it is the opinion of this Court that the Defendant did not forfeit his expectation of privacy in his apartment by merely leaving the door ajar and, thus, the protections of the Fourth Amendment are applicable. As a consequence, even though the crack pipe was in plain view, the officers could only enter if exigent circumstances were present. It is clear no such conditions existed. Accordingly, their failure to secure the apartment and obtain a search warrant is fatal to the instant prosecution, as the evidence of the gun found thereafter must be suppressed. Moreover, the Government's argument as set forth in a footnote that they would have had the right to enter the apartment had they been arresting McNary pursuant to two outstanding warrants for his arrest is devoid of merit. They did not arrest him *inside* his apartment. Furthermore, following the Government's reasoning to its logical end would permit officers to conduct a warrantless search of a defendant's home far away from his place of arrest. The Government has offered no caselaw support for its position and the Court is unaware of any.

As the Sixth Circuit observed in Colbert, (6th Cir. 1996),

> we recognize that police officers have an incredibly difficult and dangerous task and are placed in life threatening situations on a regular basis. It would perhaps reduce the danger inherent in the job if we allowed the police to do whatever they felt necessary, whenever they needed to do it, in whatever manner required, in every situation in which they must act. However, there is a Fourth Amendment to the Constitution which necessarily forecloses that possibility. As long as it is in existence, police must carry out their often dangerous duties according to certain prescribed procedures . . .

Colbert, 76 F.3d at 778.

**IT IS SO ORDERED** this 30th day of November, 2005.


_____
J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

17

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 81 in case 2:05-CR-20142 was distributed by fax, mail, or direct printing on December 1, 2005 to the parties listed.

Lee Howard Gerald
LAW OFFICE OF LEE GERALD
8 S. Third St.
Fourth Floor
Memphis, TN 38103

E. Greg Gilluly
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Honorable J. Breen
US DISTRICT COURT